IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
| v. | ) |  |
|  | ) | No. 11 CR 595 |
| KEENAN R. FERRELL | ) |  |
|  | ) | Judge Virginia M. Kendall |
| Defendant. | ) |  |

## MEMORANDUM OPINION AND ORDER

Defendant Keenan R. Ferrell ("Ferrell") moves this Court to suppress statements he made to law enforcement agents while they executed a search warrant on June 2, 2011 at the offices of his companies, Take Action, Inc. and Inner Arts, Inc. This Court held a suppression hearing on December 3, 2012 to determine whether agents from the Federal Bureau of Investigation ("FBI") and the Department of Health & Human Services Office of Inspector General ("OIG") subjected Ferrell to a custodial interrogation and whether Ferrell requested the presence of an attorney. For the reasons set forth below, Ferrell's Motion to Suppress is denied.

## BACKGROUND

The Government has charged Ferrell and his co-defendant, Bryce Woods, with health care fraud, in violation of 18 U.S.C. § 1347, in a nine-count indictment. The indictment alleges that Ferrell and Woods, through Take Action and Inner Arts, engaged in a scheme to defraud Medicare by employing psychology graduate students, other health care providers, and Defendant Woods to provide psychotherapy session to patients at various nursing homes. Take Action and Inner Arts

then allegedly billed Medicare as if Ferrell, a licensed clinical psychologist, provided the patients with the psychotherapy sessions himself.

On June 2, 2011, law enforcement agents from the FBI and OIG executed a search warrant at 5455 North Sheridan Avenue, Suite 1709 in Chicago, Illinois.[1] (Tr. 60-61.) This is the location of Inner Arts and Take Action's office. (Tr. 9.) Prior to conducting the search at 5455 North Sheridan, the FBI and OIG went to Ferrell's house to attempt to interview him. (Tr. 61.) No one answered the door, so the FBI and OIG proceeded to 5455 North Sheridan to execute the warrant. (Tr. 62-63.) Towards the end of the search, Woods arrived at the office and agreed to be interviewed by FBI Agent Steven Blaum and OIG Agent James O'Leary. (Tr. 65.) While the agents were interviewing Woods, Ferrell arrived at the offices. (Tr. 67.) The doorman to the building informed Ferrell that agents were interviewing Woods in the building's "party-room." (Tr. 11.) Ferrell voluntarily went to the party-room and knocked on the door.

When Ferrell entered the party-room, he saw Woods being interviewed by agents Blaum and O'Leary. (Tr. 12-13.) He also found two computer forensic analysts and two other FBI agents in the room. (Tr. 12-13.) Ferrell observed that four of the agents were armed; however, their firearms were holstered. (Tr. 27-29, 72-73, 93.) When Ferrell arrived at the room, he demanded that the agents interview him instead of Woods. (Tr. 67-68, 88.) Blaum told Ferrell that the agents wanted to interview him but could not do so with Woods present. (Tr. 68.) Ferrell told Woods to take Ferrell's dog, which Ferrell had brought to the party-room. (Tr. 68.) Woods told the agents that he did not have anything else to say and the agents excused Woods. (Tr. 68.) After Woods left, the

---

[1] References to the December 3, 2012 hearing are abbreviated as "Tr.___."

2

agents closed the door, which locked automatically. (Tr. 14.) The agents then began their interview of Ferrell. (Tr. 68.)

The agents did not tell Ferrell that his interview was voluntary or that he was free to terminate the interview at any time. (Tr. 16, 68, 89.) Agent O'Leary testified that the agents usual practice is to inform a target or a witness that a non-custodial interview is voluntary; however, he does not follow that practice when the target or witness affirmatively requests to be interviewed. (Tr. 89.) The agents did not read or inform Ferrell of his *Miranda* rights prior to conducting the interview. (Tr. 16, 69, 90.) Once the interview began, Ferrell never told the agents that he wanted to terminate the interview or that he wanted to leave. (Tr. 37, 69, 89.) He never told the agents that he wanted to speak to an attorney. (Tr. 69, 85, 89-90.) He never asked the agents to be able to use the phone. (Tr. 91-92, 95.) He never told the agents that he, or his company, had an attorney on retainer. (Tr. 92.) He never mentioned the name of his attorney to the agents. (Tr. 69, 86, 91-92.) He never told the agents that he felt bullied or uncomfortable. (Tr. 73-74, 95.) He never stated that he could not answer the agents' questions effectively. (Tr. 74, 95.) In fact, after the interview ended Ferrell had a casual conversation with agents Blaum and O'Leary about his new dog.[2] (Tr. 90.)

During the course of the interview, the forensic computer analysts were downloading material from Woods's computer. (Tr. 91.) They continued to download information after the agents concluded the interview with Ferrell. (Tr. 91.) However, Ferrell continued to sit in the room

---

[2]During the suppression hearing, Ferrell testified that he mentioned the name of his lawyer to the agents. (Tr. 15.) He also testified that he told the agents he wanted to call the pre-paid legal services his company used. (Tr. 39.) He further testified that he told the agents he "would like to run all these kinds of things by [his] lawyer," but that the agents would not let him call his lawyer. (Tr. 16.) Ferrell also testified that he told the agents that he felt like they were bullying him. (Tr. 17.) However, for reasons described below, the Court does not credit Ferrell's testimony. *See United States v. Huerta,* 239 F.3d 865, 872 (7th Cir. 2001) (holding that credibility determinations are left to the discretion of the district court "unless the district court has chosen to credit exceedingly improbable testimony.").

while the forensic analysts completed their download. (Tr. 91.) Ferrell never attempted to contact his attorney during this period of time either. (Tr. 91.)

Ferrell did not speak with Government agents either before or after this interview. On September 11, 2012, he filed a motion to suppress, along with a supporting affidavit, that asks this Court to suppress all statements he made during the June 2, 2011 interview because, in conducting the interview, the Government violated his Fifth and Sixth Amendment rights. Specifically, Ferrell alleges that the Government placed him in custody and interrogated him without first administering *Miranda* warnings. Additionally, Ferrell alleges that he unequivocally invoked his right to counsel during the interview; however, the Government failed to heed his request. The Court held a suppression hearing on December 3, 2012 to determine whether the Government subjected Ferrell to a custodial interrogation.

## **DISCUSSION**

"[A] suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning, and...the police must explain this right to him before the questioning begins." *Davis v. United States,* 512 U.S. 452, 457 (1994); *see also Miranda v. Arizona,* 384 U.S. 436, 469-73 (1966); *United States v. Littledale,* 652 F.3d 698, 701 (7th Cir. 2011). "The *Miranda* right to counsel ensures that a person under arrest has access to legal counsel during custodial interrogations." *United States v. Muick,* 167 F.3d 1162, 1165 (7th Cir. 1999) (citing *Edwards v. Arizona,* 451 U.S. 477 (1981)). "[A] suspect must be both in custody and subject to interrogation to trigger the *Miranda* warnings requirement." *United States v. Salyers,* 160 F.3d 1152, 1159 (7th Cir. 1998). "If a suspect invokes his right to counsel under *Miranda,* he is not

4

subject to further interrogation until counsel is present or until the suspect himself initiates further discussions." *United States v. McKinley,* 84 F.3d 904, 908 (7th Cir. 1996).

The Government does not dispute that it interviewed Ferrell without administering *Miranda* warnings. Accordingly, the relevant question that this Court must decide in determining whether Ferrell's statements should be suppressed is whether Ferrell was in custody at the time of the interview.[3] To determine whether a person is in custody, the Court analyzes the totality of the circumstances. *See Sprosty v. Buchler,* 79 F. 3d 635, 640 (7th Cir. 1996). The ultimate inquiry is "whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Id.* (internal citations and quotations omitted). An individual is only in custody if a reasonable person would have believed he was not free to leave under the circumstances. *See Salyers,* 160 F.3d at 1159.

In applying the totality of the circumstances test, courts consider whether the encounter occurred in a public place, whether the suspect consented to be interviewed; whether the officers informed the individual that he was not under arrest and was free to leave; whether the individual was moved from one location to another; whether law enforcement formed a threatening presence and engaged in a display of weapons or physical force, and whether the officers' tone of voice was such that their requests were likely to be obeyed. *See United States v. Ambrose,* 668 F.3d 943, 956 (7th Cir. 2012); *United States v. Thompson,* 496 F.3d 807, 810-11 (7th Cir. 2007). When a person

---

[3]Since the Government did not administer *Miranda* warnings, the question of whether Ferrell actually invoked his right to counsel is not relevant to determining whether his statements should be suppressed. Statements by a defendant must be preceded by *Miranda* warnings if they are the product of a custodial interrogation otherwise they must be suppressed. *See Ambrose,* 668 F.3d at 954. On the other hand, if the defendant was not in custody at the time the statements were made, the defendant had no right to an attorney. *See United States v. Wyatt,* 179 F.3d 532, 537 (7th Cir. 1999) ("The Fifth Amendment right to counsel safeguarded by *Miranda* cannot be invoked when a suspect is not in custody.") (citing *United States v. LaGrone,* 43 F.3d 332, 337 (7th Cir. 1994)). Accordingly, suppression turns on the question of custody.

voluntarily agrees to speak to law enforcement that weighs in favor of a reasonable person believing that he was free to leave and was not in custody. *Ambrose,* 668 F.3d at 956; *Thompson,* 496 F.3d at 810.

After applying the totality of the circumstances test, the Court finds that the evidence adduced at the suppression hearing shows that Ferrell was not in custody at the time Agents Blaum and O'Leary interviewed him. First, Ferrell voluntarily chose to speak with the Government. He voluntarily came to the offices at 5455 North Sheridan Avenue, voluntarily went up to the party-room, voluntarily knocked on the door and voluntarily demanded to be interviewed. In fact, he demanded that agents end their interview with Woods so that he could speak with them immediately. Since Ferrell voluntarily demanded to speak with the agents, this factor supports a finding that a reasonable person would believe that Ferrell was not in custody and was free to terminate the interview at any time. *See Ambrose,* 668 F.3d at 956; *Booker v. Ward,* 94 F.3d 1052, 1058 (7th Cir. 1996) (finding that when the suspect voluntarily agreed to an interrogation, the interrogation was not custodial).

Second, Ferrell was never formally placed under arrest at the time of the interview or physically restrained in any manner. In fact, Ferrell was never arrested. (Tr. 84.) Third, the agents never attempted to move or relocate Ferrell from the party-room for purposes of conducting the interview. For example, the agents did not ask Ferrell to accompany them to the FBI field office. Finally, there was no display of weapons, physical force or touching. While agents Blaum, O'Leary and Leitelt were armed at the time of the interview, their weapons were holstered. The mere possession of weapons by government agents does not make their presence sufficiently threatening so that a reasonable person would believe they are in custody. *See Littledale,* 652 F.3d at 702

(holding that defendant was not in custody at time of interview because "although the officers carried holstered weapons, neither the officers, nor the agents physically touched, threatened to touch, or handcuffed [the defendant]."). These factors all cut in favor of finding that Ferrell was not in custody when agents Blaum and O'Leary interviewed him.

Ferrell contends that the agents subjected him to a custodial interrogation because they never affirmatively told him that he could terminate the interview at any time. Ferrell contends the he felt threatened by the agents because they were armed and because they had a rough tone of voice. As an initial matter, the Court did not find Ferrell to be a credible witness. Ferrell submitted a sworn affidavit in support of his motion to suppress his statements. However, upon cross-examination by the Government, Ferrell conceded that a number of the statements in his sworn affidavit were inaccurate if not false. (*See* Tr. 31, ln. 16-18 [Question: "Everything that you put in that affidavit was true, correct?" Answer: "No."].) Specifically, Ferrell admitted that the following statements were not true: (1) that the officers stationed an armed guard outside of the party room; (2) that there were six armed federal agents in the room; and (3) that he categorically and unequivocally requested to speak to an attorney. (Tr. 31, 33, 38, 40-41.)

Moreover, even accepting Ferrell's version of the events, the totality of the circumstances test shows that the agents did not subject Ferrell to a custodial interrogation. The only factors that Ferrell cites are that the agents used a rough tone of voice and did not tell him the interview was voluntary. However, the other factors, such as Ferrell's demand to be interviewed, demonstrate that a reasonable person would not have believed that they were in custody based on the circumstances described at the suppression hearing. Indeed, the Seventh Circuit has held that a subjective impression that a defendant was not free to leave does not render a consensual encounter custodial.

7

*See Wyatt,* 179 F.3d at 537.  Accordingly, Ferrell failed to sufficiently prove that he was subjected to a custodial interrogation.

## **CONCLUSION**

For the reasons stated above, Ferrell's Motion to Suppress is denied.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: **12/27/2012**